GOLLNICK, Appellant, v. LUEDTKE, et al., Respondents.

(187 N. W. 542.)

(File No. 4788.   Opinion filed March 31, 1922.)

1.  **Elections—School Election—Farm Owners in And Claiming Legal Residence in School District, But Residing Part of Time in Town, Whether School Electors—Viktora v. Cressman Followed.**

Where heads of families, who owned farms and with their families lived thereon part of the time in a school district, but who also owned residence properties in town where they lived temporarily but without having intended to abandon their farm residence and who had never voted in town, offered, together with the wives of some of them, to vote at a school district election in said district, they were improperly refused right to vote, being legal electors in said district; following Viktora v. Cressman, 41 S. D. 159, 169 N. W. 551.

2.  **School Districts—New School Site, Election For, Whether For "Removal" of Schoolhouse—Statutes Construed—What Constitutes "Removal."**

In a suit to enjoin school district officers from purchasing a new school site and locating a schoolhouse on such site, held, that under Sec. 7494, Code 1919, empowering school board to direct removal of school house to a more convenient location on affirmative vote of majority of electors of entire district; Sec. 7496, making it lawful for school board to take and hold land legally chosen as schoolhouse site by a lawful district meeting; Sec. 7495, making it duty of board to purchase or lease such sites, build, hire, purchase, sell or remove school houses, when lawfully directed by electors of the district; and

Sec. 7456, providing for general instruction of school boards by district electors at the annual election;—the vote for new site having been taken at a special election, the latter section does not apply; while if defendants contemplate a "removal" of the schoolhouse, Sec. 7495 is inapplicable, Sec. 7494 being controlling. Therefore, held, further, that fixing of new site necessarily involves a change in schoolhouse site of the district; especially in that the petition voted on, as presented to board at the special election, was for "change of school house site;" that the schoolhouse site will be changed when a new site is occupied by a .schoolhouse and the old schoolhouse stands abandoned, and not till then, and when so accomplished the "schoolhouse" has been removed—coming into existence on the new site.

**8.   Statutes—Construction of—Consideration of Exigencies Arising If Contended-for Construction Adopted, As Rule of Construction—Rule Illustrated—Meaning of "Schoolhouse"—Majority District Vote Necessary to Change.**

A well-recognized rule of construction of statutes, to be followed, is to consider what might happen thereunder if given the construction contended for; as in case of attempted removal of schoolhouse to another location, where, as under Sec. 7494, Code 1919, a two-thirds vote is necessary, could a mere majority, desiring to effect such change, but knowing more than one-third would oppose, circumvent said section by voting by bare majority, bonds on district to build new schoolhouse, then by using that vote, by another majority vote choose a new site at a point to which Sec. 7494 would forbid moving of old building except by two-thirds vote?—an obviously unsound contention. And held, that the term "schoolhouse" refers to the school plant, including general equipment, and pupils and teacher; that where statute requires vote of electors of entire district in changing place of the schoolhouse, all elements express themselves, as convenience, expense, etc., and the election means more than moving the house; hence the vote in instant case did not authorize changing location of schoolhouse of the district.

Anderson, J., not sitting.

Appeal from Circuit Court, Day County.   Hon. FRANK ANDERSON, Judge.

Action by John Gollnick, against William Luedtke, Emil Luedtke and another as the Board of Education of School District Number 183, Day County, South Dakota, to enjoin defendants as such school officers from undertaking, by purchasing a new site, to locate a school house upon a new site.   From an or-

der dissolving a temporary injunction, plaintiff appeals. Reversed, and trial court directed to issue an order permanently restraining defendants.

*Lewis W. Bicknell,* for Appellant.

*I. S. Coomes,* and *L. H. Woodworth,* for Respondents.

(1)  To point one of the opinion, Appellant cited:  20 C. J. 70; Smith v. Thomas, 52 Pac. 1079; Bernsmeyer v. Kreitz, 26 N. E. 704.

Respondents cited:  9 R. C. L., p. 1031, Sec. 47.

(2)  To point two, Appellant cited:  Words and Phrases, Vol. 4, p. 81 (2nd series); State ex rel. v. Marshall, 13 Mont. 136, 32 Pac. 648; 35 Cyc. 937-8, and cases cited.

(3)  To point three, Respondents cited:  State ex rel. McCue v. Blaisdell, 18 N. D. 31, 119 N. W. 360; Sec. 7496, Code 1919.

WHITING, J.   This action was brought to restrain defendants, as school officers, from undertaking, by purchase of a new site, to locate a schoolhouse at a place other than that then occupied by the existing schoolhouse. The existing building had become unfit for use; and a new schoolhouse had been authorized when an election was held on the question of adopting a site for the new building.   This was a special election.   Defendants claim that the electors, by their votes, authorized the purchase of the new site about a mile from the site of the present building.   The trial court held with defendants.   The court found that four persons, claimed by plaintiff to be legal electors of the school district, were not such electors.   If such finding was correct, the new site received the support of the majority of all the electors of the district, concededly sufficient to authorize the change; otherwise, such new site did not receive the majority vote of all of the electors of the district, and only a bare majority vote of those voting at the particular school election—insufficient to authorize the "removal" of a schoolhouse.

Two questions are thus presented upon this appeal:  Were these four persons electors of this school district?  Would the building of a schoolhouse on the new site, and the abandonment of the present building, be a "removal" of the schoolhouse?

[1]  We find it unnecessary to review the evidence touching the first of these questions.  The facts of this case establish that

all four of these persons were electors of this school district, under the holding of this court in Viktora v. Cressman, 41 S. D. 159, 169 N. W. 551.

Section 7494, R. C. 1919, provides that—

"The school board shall have power to direct the removal of a schoolhouse to a more convenient location, upon the affirmative vote of a majority of the electors of the entire district, or. * * *"

[2]   However, it is contended that it would not be a "removal" of a schoolhouse were the present school building to be left where it is, and that therefore only a majority vote of the electors was necessary to select the site for a new building.   It is claimed that sections 7456, 7495, and 7496, R. C. 1919, give support to such contention.   The only portion of section 7496, as same was amended by chapter 180, Laws 1919, that has any bearing whatsoever on this matter, reads as follows:

"It shall be lawful for any school board to take and hold any land, * * * legally chosen as a schoolhouse site by lawful district meeting."

Section 7495 provides that—

"It shall be the duty of the school board to purchase or lease schoolhouse sites, build, hire, purchase, sell and remove schoolhouses, when *lawfully directed by the electors of the district.*"

.When is land "legally chosen as a schoolhouse site;" and when is a school board "lawfully directed" to purchase a new site for a schoolhouse?   Section 7456 provides for the general instruction of school boards by electors of a district at the "annual * * * election."   The vote upon the site for the new schoolhouse was not taken at the "annual election," but at a special election held for that purpose; so section 7456 has no application. Furthermore, if what the defendants contemplate amounts to a "removal" of the schoolhouse, the provisions of the general statute would have no application; as we have the special statute (section 7494, supra) controlling (Luze v. Bruening, 42 S. D. 414, 176 N. W. 41.)

Are defendants intending to "remove" the schoolhouse?   If the new site was to be for the old building, no one would claim that the vote was not for a "removal," but the fixing of a new site involves, of necessity, a change in the schoolhouse site of such district, and it was so understood. The petition for the spec-

ial election, as presented to the school board was a "petition for change of schoolhouse site." The election canvassers found that the vote was in favor of "changing the schoolhouse site." When will the schoolhouse site be actually changed? Clearly when a new site is occupied by a schoolhouse and the old schoolhouse stands abandoned. Then and not until then, is there a change in sites; and, when this has been accomplished, the "schoolhouse" has been removed. It ceases to exist where it was—the old building is no longer the "schoolhouse;" it comes into existence on the new site—the new building becomes the "schoolhouse" of the district. It is just as much the "removal" of a schoolhouse to abandon and cease to use one building and move into another, as it is to move a schoolhouse with its contents from one place to another; and such a removal comes under the provisions of section 7494, supra.

[3] One well-recognized rule to be followed to aid in the construction of statutes is to consider what might happen under such statutes if they should be given the construction contended for. Take a schoolhouse which has been located in the center of the district. Nothing but a two-thirds vote will authorize the "removal" of that schoolhouse to another location in the district. Section 7494, supra. It is possible that, if a mere majority of the electors of the district desired to change the location of the school, and knew that more than one-third would oppose such change, the law is such that they could circumvent the provisions of section 7494? Could they, by a bare majority vote, vote bonds upon the district to build a new schoolhouse even though the existing schoolhouse might be entirely adequate; and then, using the vote for a new schoolhouse as an excuse therefor, by another bare majority vote, choose a site for the new schoolhouse at a point to which section 7494 would forbid the moving of the old building except by a two-thirds vote? A mere statement of this illustrative case, showing what might happen under defendants' contentions, is sufficient to show the absolute unsoundness thereof.

In State v. Marshall, 13 Mont. 136, 32 Pac. 648, the school board moved the school from one building to another, and action was brought to compel the return of such school to its former location, it being contended that the statute which required a vote of the electors for a removal of the school building con-

trolled the question of moving the school. The decision therein is directly in point on the right of the defendants to move the school into the new building without being authorized so to do by the vote required by section 7494.

"When the statute provides that the school trustees shall have power to remove 'schoolhouses' only when directed by a vote of the district so to do, we are of opinion that the term 'schoolhouse' does not mean simply the house, but refers rather to the school plant, including the general equipment, furniture, maps, charts, globes, and pupils and teacher. * * * but the trustees must not change the place of the school without the vote of the district. At such election all elements express themselves. Matters of convenience to the majority, questions of expense to the district, suitability of site, and scores of opinions and influences which sway a rural school district, are sifted down through the ballots, and the result demonstrates the will of the people as to the site of their school. This, in our opinion, was within the view of the Legislature, and they meant to express their intent (section 1885, subd. 6) that the people should determine the site for their school. This is a more reasonable view than to hold that the statute means to say only that a vote shall be had upon the question of moving the house. The house is the shell—the envelope. The substance is the school itself, and it is that, in our opinion, which the statute contemplates."

It follows that the vote taken did not authorize the changing of the location of the schoolhouse that was to be occupied as such by this district.

The order appealed from is reversed, and the trial court directed to issue an order permanently restraining defendants from erecting the new building at any other place than at the site of the old building.

ANDERSON, J., not sitting.