MITCHELL PRODUCE COMPANY, A CORP., Respondent, v.
MORRISON, Secretary of State, et al, Appellants.

(257 N. W. 47.)

(File No. 7697.   Opinion filed November 8, 1934.)

*Walter Conway,* Attorney General, *L. E. Navin,* State's Attorney, of Mitchell, and *Herman L. Bode,* Assistant Attorney General, for Appellants.

*Bielski & Elliott* and *John P. McQuillen,* all of Sioux Falls, for Respondent.

CAMPBELL, J.   Chapter 139, Laws 1933, provides for the payment of compensation for unusual use of the state highways

by motor carriers as defined in the act. Plaintiff instituted the present action to enjoin the defendants from arresting or prosecuting plaintiff for noncompliance with the act and from enforcing or attempting to enforce the terms thereof against plaintiff. The allegations of the complaint with reference to plaintiff's use of the highways are as follows:

"That plaintiff is now, and for several years last past has been engaged in the business of buying and selling farm products, consisting chiefly of poultry and eggs; that plaintiff owns and maintains a large establishment in the City of Mitchell, State of South Dakota, which constitutes plaintiff's principal place of business, and in which, including equipment, fixtures, stock of goods, and supplies, plaintiff has many thousand dollars invested."

"V. That plaintiff's principal revenue is obtained from and through the sale of poultry and eggs which plaintiff purchases daily from dealers, in poultry and eggs, residing in and having their places of business in the various towns and cities, located within a radius of from ten miles to one hundred miles from Mitchell, South Dakota; that the average gross revenue to plaintiff in thus purchasing and selling poultry and eggs from dealers in such surrounding territory for many months past has been, and now is approximately $30,000.00 per month.

"VI. That in the maintaining of plaintiff's said business and in the purchasing of poultry and eggs from dealers as aforesaid, plaintiff owns and operates three Chevrolet automobile trucks, each of a rated capacity, by the manufacturer thereof, of one and one-half (1½) tons; that the actual weight of each of said motor vehicles, including body and equipment thereof, but exclusive of all load, is approximately thirty-eight hundred pounds; that each and all of said motor vehicles are constructed in such manner, and are equipped with lights, brakes and such other equipment and paraphernalia as to comply with all of the laws and regulations of the State of South Dakota, pertaining to the use of motor vehicles upon the public highways of the State of South Dakota; that each and all of said motor vehicles are duly licensed as provided by law, and plaintiff in all respects complies with, and has at all times complied with all of the laws and regulations of the State of South Dakota, with respect to the ownership and operation of said three motor vehicles upon the public highways of this state.

"VII.   That in the maintaining of plaintiff's said business, as hereinbefore stated, and in the purchase of poultry and eggs from the various dealers therein, in neighboring towns and cities, it is necessary for plaintiff to purchase the same from the dealers, at their respective places of business, and, to deliver such products in motor vehicles or other vehicles furnished by plaintiff, and at plaintiff's expense, to plaintiff's place of business."

"X.   That in truth and in fact, plaintiff is the sole and exclusive owner of each and all of said motor vehicles; that plaintiff at all times uses and operates all of said motor vehicles exclusively in the transportation of poultry and eggs which are intrinsically farm products and originate in and are produced from farming; that such poultry and eggs, thus transported by plaintiff in said motor vehicles are and always have been, at the time of their transportation, poultry and eggs owned exclusively, and in the exclusive possession of plaintiff."

To this complaint defendants demurred for that it failed to state facts sufficient to constitute a cause of action.   Their demurrer having been overruled, defendants have appealed.

The appeal presents and the parties have argued and submitted but a single question, namely, whether or not, in the light of the facts alleged in the complaint, the statute is applicable to the operations of respondent.   No constitutional points are urged.

The act (section 3, Subd. (j) says:   "The term 'motor carrier,' when used in this Act, means any person owning, controlling, operating or managing any motor vehicle, trailer, or semitrailer for the transportation of persons and/or property over the public highways in this state."   It then proceeds to establish a number of exceptions to this broad definition by language which so far as material to the present case is as follows:   "providing, that the term 'motor carrier' as used in this Act shall not include corporations or persons insofar as they own, control, operate, or manage * * * motor vehicles exclusively used in the transportation of products originating in and/or produced from or necessary to, or for farming, mining and/or logging operations when transporting such products actually produced or owned by the owner of such motor vehicle or vehicles or occasionally used in hauling such products in the ordinary exchange of work."   Our inquiry therefore narrows to this question:   Assuming the truth of the allegations of the complaint

above quoted as to the nature of respondent's operations, is respondent exempted from complaince with the act by virtue of the proviso last above quoted?

It is plain from the allegations of the complaint, and it was admitted upon the oral argument, that the poultry and eggs transported by respondent were products originating in and produced from farming. The course of the business is that the farmers sell or exchange their eggs and poultry to merchants and local dealers at their various market towns. Respondent calls daily upon the dealers, purchases from such dealers the poultry and eggs which they have taken in from the farmers, and, having become the owner thereof, transports the same in its own trucks to its place of business in the city of Mitchell.

The general intention of the Legislature in enacting the statute in question and the object and purpose thereof and motives underlying its enactment appear quite readily from the context of the act as a whole, and are perhaps particularly exemplified by the title and first two sections of the act, which read:

"An Act Entitled, An Act Providing for the Regulation, Supervision and Control of the Transportation of Persons and Property by Motor Vehicle Upon the Public Highways of This State and Prescribing Compensation to Be Paid for the Unusual Use of Such Highways, and Providing for the Distribution of Funds Derived Hereunder and Providing for the Administration Hereof and Repealing Sections 19 and 20 of Chapter 224 of the Session Laws of 1925.

"Be It Enacted by the Legislature of the State of South Dakota:

"Section 1. *Declaration of Policy.* The business of operating as a motor carrier as hereinafter defined upon the highways of this State is declared to be a business affected with the public interest. The rapid increase in motor carrier traffic over the highways of this State tends to subject said highways to unusual wear and impairs the said highways disproportionately to the travel thereon by the general public necessitating compensation to the State for the maintenance, upkeep and policing of the said highways to the end that said highways may be maintained in the best possible condition for the convenience and use of the general public.

"Section 2. *Unusual Use of the Highway.* For the purpose of this Act, any person as herein defined, using the public highways of this State as a motor carrier, shall be deemed to be making unusual use of said highways."

The machinery adopted by the Legislature to accomplish its objects was to provide for the payment of compensation by motor carriers as defined in the act; to establish a broad and comprehensive definition of the term "motor carrier"; and then to exempt out from the definition and operation of the act certain specific transportations. Respondent, being admittedly a motor carrier within the broad definition of the act, but claiming the protection of one of the exceptions, must show itself clearly within the terms of the exception. Paddock v. Balgord (1891) 2 S. D. 100, 48 N. W. 840. The canons of statutory construction with reference to exceptions from a general provision are well understood, and to cite authorities in relation to that point seems unnecessary. The applicable principle is well stated in 59 C. J. p. 1092, as follows: "Exceptions, as a general rule, should be strictly, but reasonably, construed; they extend only so far as their language fairly warrants, and all doubts should be resolved in favor of the general provision rather than the exception."

Looking at the exception relied upon by respondent here, there is neither dispute, nor room for dispute, as to the meaning of any particular word or words therein. Respondent contends that if it once be established with reference to any property that it originated in or was produced from farming, mining, or logging operations, or is necessary to or for such operations, then for all time and under all circumstances, any and every transportation of such property by motor vehicle over the highways of South Dakota is exempt from this law so long as the transporting motor vehicle is owned either by the man who originally actually produced the property or by the man who is at the time of the transportation the owner of the property. "One well-recognized rule to be followed to aid in the construction of statutes is to consider what might happen under such statutes if they should be given the construction contended for." Gollnick v. Luedtke (1922) 45 S. D. 308, 187 N. W. 542, 543. It may be not unprofitable to examine respondent's contention somewhat from that point of view. It will be conceded

that anthracite coal is produced in Pennsylvania from a mining operation. If such coal is shipped into this state, then whoever owns it may move it about over our highways in his own truck as much as he pleases and for such purposes as he desires without payment of compensation, merely because he owns it and because it had its origin in a mining operation. And if the Pennsylvanian who mined it brings his truck to South Dakota he may do likewise because he would be the man who had actually produced it. It would doubtless be conceded that farm implements, barbed and woven wire fencing, and fence posts are all necessary for farming. The owner of any such property may therefore transport the same in his own truck as much and as often as he pleases over our highways without paying compensation, though he never uses the property in connection with any farm and never intends to, merely because the property is in its nature necessary for or to farming and he owns both the property and the vehicle in which it is transported. The transportation of grain or cattle by truck over our highways at any time and for any purpose could never be subject to compensation so long as the vehicle owner either owned the property or had produced it. It might be conceded in these days of tractor operation that gasoline and kerosene are necessary for farming and logging operations. The owner of any gasoline or kerosene may therefore transport the same at will in his own motor vehicle over the highways of this state without payment of compensation, merely because of its nature and the fact that he owns it and even though he never intends to use it for or in connection with farming or logging and his transportation of the property is not intended or designed to enable the property to be used in any such operations. Each of the cases above supposed would constitute a transportation exempt under respondent's construction of the statute. But it seems equally clear that the Legislature, when it passed the act, did not intend such transportations to be exempt, and we may judicially notice that to hold them exempt would practically nullify the act.

We do not believe we are driven to a construction which is so absolutely literal and at the same time so entirely out of harmony with the object and intention of the statute. The Legislature was exempting from the general purview of the statute persons who operate motor vehicles in certain specified transportations. Plainly

the Legislature wished to exempt from payment of compensation transportations in both directions quite directly connected with and incidental to farming, mining, and logging operations. But we do not think the words "products originating in and/or produced from or necessary to, or for farming, mining and/or logging operations" (section 3) can or should be deemed to apply solely and exclusively to the nature of the property being carried, or should be construed as utterly disconnected and disassociated from the specific transportation claimed to be exempt. Doubtless more precise language might have been adopted, but we think it quite plainly appears that the Legislature intended the words last above quoted to have application not only as to the nature of the property but also with reference to the particular transportation claiming exemption. So far as concerns the transportation of products originating in or produced from farming, mining, or logging, it is not enough merely that the property transported shall have been at some previous point in its existence so produced or that at some time or other it thus originated. It must thus originate or must be thus produced to the particular transportation claiming exemption. When respondent, for instance, sends its truck to a dealer at White Lake, buys from him fowls which he owns, and transports them to Mitchell, it is not, we think, material whether this dealer originally got the fowls from a farmer or whether he himself raised them with loving care on his own urban premises. So far as concerns any relation to the transportation thereof by respondent from White Lake to Mitchell, they did not originate in and were not produced to that transportation from any farming operation. From the point of view of respondent's connection with those fowls and transportation of them, they originated at and were produced from the pens of the White Lake poultry dealer. So likewise in the other direction. If a lumber company, owning yards at A and B, should believe it had too many cedar posts at A and not enough at B, and should truck a load of them from one yard to the other, that would not be (within the contemplation of this statute) a transportation necessary to or for farming. It would be a transportation for the convenience of the lumber company. On the other hand, if the farmer loads four head of his cattle into his truck (whether he raised them or bought them from some one else and perhaps fed them), hauls them to his market town and sells

them, and brings home a load of fence posts for his pasture, both transportations are exempt.

We believe this to be a reasonable construction of the statute, as well as the construction which the Legislature intended and which may avoid serious constitutional questions as to the validity of the statute. We think therefore that the order appealed from must be and it is, reversed.

All the Judges concur.